### WOLCOTT v. UNION FERRY CO. OF NEW YORK AND BROOKLYN.

(Circuit Court of Appeals, Second Circuit. June 8, 1915.)

No. 301.

COLLISION ⊂⇒93—VESSEL PASSING OUT OF SLIP—NEGLIGENT LOOKOUT.

A collision in East River in the evening between a ferryboat, which had just left its slip, and a steam lighter passing up to a pier above, which had stopped 200 feet in front of the slip to allow other vessels to pass out in front of her, *held* due solely to the fault of the ferryboat in failing to sooner see the lighter by reason of her lookouts not having taken their positions.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 194, 195; Dec. Dig. ⊂⇒93.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, holding respondent's ferryboat Montauk solely in fault for a collision with the steam lighter Alice. The collision happened about 9 p. m. March 4, 1913, in the East River opposite the Hamilton Ferry slip on the Manhattan side. The night was dark but clear, the tide first of the ebb. The Alice was bound from Staten Island for slip between Piers 5 and 6 East River, Manhattan. The ferryboat was bound out of her slip. The details of what occurred may be found in the opinion of the District Judge. 213 Fed. 529.

James J. Macklin and De Lagnel Berier, both of New York City, for appellant.

Foley & Martin, of New York City (William J. Martin and G. V. A. McCloskey, both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The testimony as to vital points is conflicting and cannot be reconciled. To our minds the weight of testimony indicates that, at the time the Montauk, then 25 feet from the bridge, blew the slip whistle, the Alice was lying directly in front of the mouth of the Hamilton Ferry slip, about 200 feet out and at right angles to the course of the ferryboat. That the Alice was then substantially at rest and that she was properly at rest there, because while moving to cross the mouths of these several slips she was interrupted by the coming out of the Thirty-Ninth Street and the Atlantic Avenue boats and had to stop to let them cross her bows. These slips lie immediately beyond the Hamilton Avenue slip out of which the Montauk came. As we understand his opinion; Judge Chatfield reached the same conclusion as to the Alice's position at the time.

The Alice being in this position, we think the Montauk should have seen her and the other two ferryboats, which were stopping her progress, and should not have kept on out of her slip until the Alice had been freed from obstruction and had moved on.

Apparently the situation of the Alice was not seen or was not fully understood by those on the Montauk as soon as it should have been. The two lookouts of the Montauk were not in place until after she had moved on a considerable distance.   One of them testified that he unhooked one side, shut the gates, and rung the bell to start her off from the bridge; he then proceeded forward by a course which he described.   The other lookout unhooked his side, lifted the rudder pin, put up the chain, and then proceeded forward.   The Montauk was moving out all this time.   In consequence, one lookout heard the three blasts and alarm whistles "before (he) got to the other end," i. e., forward at his post.   The other heard two back bells and alarms and, running through the gangway, reached the starboard bow when the Alice was about 20 feet away.

Decree affirmed with interest and costs.